The next case today is Rommel Alexander Chavez v. Merrick B. Garland, Appeal No. 21-1267. Attorney Kim, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. May it please the Court, saying Yob Kim for Petitioner. Chief Judge Howard, if I may, I would like to reserve one minute for rebuttal. Yes. Thank you, Your Honor. I acknowledge that there are many issues, so I will just only focus on a few issues, but I welcome the Court's question on any of the underlying issues. Let me start with the imputed gang membership social group claim that the agency categorically denied based on this Court's case law and the BIA's matter of EAG. Now, the first case law is the Canterbury Roe v. Holder, where this Court held that actual gang membership cannot be a basis for asylum and withholding because of the policy reason. Now, that reliance is erroneous because that is not what Petitioner is relying on for this imputed gang membership claim. Also, there's no dispute that he's not an actual gang member. Now, the second case law that BIA relied on is matter of EAG, and indeed matter of EAG has an expensive holding that incorrectly perceived as a gang member is also categorically foreclosed. But there's no reasoning or policy basis for this categorical holding, and in fact, even in matter of EAG, or in this case, the agency failed to provide any reasons for this expensive holding. And this is why both Ninth Circuit and Tenth Circuit rejected this part of the EAG, and that's what we asked the Court to do as well. Counsel, excuse me, you raise two very important legal issues in this case. There's the perception of gang membership issue, which you've just addressed, and then there's the way in which the withholding removal statute should be read. But don't you have a prior problem that you have to address? And that is, I think the government makes this argument that there was a determination that you were not able to establish persecution on a protected ground under the statute. And if you can't do that, then these legal issues never even come into play. We don't even reach them. So how do you address that, I would say, critical threshold issue before we engage with these two legal issues that are in the case? If you could please address that. Yes, Your Honor. So two responses for that question, Judge Lee Pence. The first response is that even if the Court finds that there's no nexus for anti-gang political opinion claim, the BIA did not address the nexus issue for the imputed gang membership claim. Indeed, as the government argued in the responsive brief, it argued on the past persecution of the imputed gang membership claim. But withholding is all about the future persecution. So even if there's no past persecution claim, the agency is required to address the clear probability of future persecution, and that reasoning and decision is absent in the BIA's decision. So under the Schennery Doctrine, if the Court agrees with us on the problem of matter of EAG, then the Court should remand this case to the agency to address the clear probability of future persecution based on the imputed gang membership social group claim. Well, on the nexus issue, I mean, why is there such a focus on the fact that in the last 23 years, your client has really spent only two months in El Salvador? Suggesting that the confrontations that he had in the past with MS-13 and with the police were a long, long time ago. And so given how dated all that is, I mean, how does that inform the issue of the fear of future persecution if he is to return? I mean, again, that factual analysis seems very important to the determinations of the IJ and the BIA here. So how do you address that issue of how dated all this information is? Yes, Your Honor. So the withholding is all about what would happen to petitioner upon remover to his country. Indeed, the outdated information, the fact that he was only present in his country almost 80 years ago, that's relevant information. And that's where the agency failed to consider the expert evidence, which is why the expert provided the context and background information and his opinion as to why expert thinks that it is highly likely that petitioner would be harmed by either the gangs or the police. And indeed, the agency does not have to agree with an expert, and that is based on agency's own case law, matter of MAMZ. But the agency still is obligated to provide reasons as to why it disagrees with the expert opinion. And that is which is why the agency also actually vacated the IJ's decision in matter of JGT, which is cited in the matter of MAMZ. And that is precisely what happens here. The agency claims that it considered the expert evidence, and it may well be reasonable if that evidence is not expert evidence because we acknowledge that agency does not have to provide and discuss piece by piece when it comes to evidence assessment. However, expert evidence is different, and that is how agency treats the expert as different. That is also consistent with this court's case law in Galeas v. Sionet, where the court emphasized the importance of the agency to consider the expert evidence. But here, even though the agency claims that it did consider the expert evidence, this decision reasoning just does not meaningfully reflect that it considered the evidence. Now, even assuming that the agency considered the expert evidence, it failed to provide reasons because obviously it appears that agency does not agree with an expert, and that is agency's own case law. So this court can vacate the anti-gang political opinion claim, which also affects the Convention Against Torture claim with respect to this point, and then vacate BI's conclusion and remand this case to the agency to address the expert evidence. If it disagrees with the expert conclusion, then provide reasons as to why it disagrees with expert. And that critical piece is completely missing in the critical parts of the decision. And as an example, the IG indeed talked about the expert opinion a little bit in the government action context of withholding. But on the contrary, there's no further mentioning of the expert or reasoning as to why it disagrees with an expert evidence in any of the parts of the anti-gang political opinion claim, past torture, future torture claim. There are echoes of the previous argument in this case in the sense that there seem to be increasing efforts to ask us to sort of micromanage the way in which the IJ and the BIA make their decisions. And that's a little bit problematic, it seems to me. I mean, there are important principles here, and that's why in cases where it appears that the BIA or the IJ totally overlooked, did not engage with important evidence, that's problematic. But when you start talking about should have said more, should have explained more thoroughly, I think that becomes a little more difficult to justify on our part. Aren't you edging towards that kind of micromanagement that might be problematic for us to do? Judge Lopez, I acknowledge the court's concern, but we are not asking the court to micromanage how the agency is assessing the evidence. What we are asking the court to do is agency follow your own precedent, and that is what the precedent that they have to follow. And under the agency's own case law, two case law coming from 2020, agency must provide reasons and must engage in very thorough individualized assessment of expert evidence. And that expert evidence is critical difference between this case and previous case, because in that case, it appears that there is no expert evidence here. Clearly, there's expert evidence, and expert was not even challenged by the Department of Homeland Security, and I accepted the expert's expertise, credibility, and expert was not given any reduced weight when it comes to the expert's weight as evidence. Counsel, where do you draw the line of the agency weighing the expert testimony and explaining, because when you say the agency has to explain or give more reasons, where do you draw a line? Does it have to be a paragraph, a page, three pages, ten pages when you're dealing with an expert? Because it seems to me it's very difficult to draw a line anywhere. I understand, Your Honor, and I think the BIA agency's own case law matter of JGT provides very clear guidelines as to what the fact finder and agents should do. So I'm looking at – I apologize, it appears that that case law was not cited in our brief or the government's brief, and I would be happy to provide S28J later if the court wants to take a look at it. But I'm looking at – Counsel, please do that. Yes, Chief Judge Howard. So I'm looking at page 104, and at the top of the paragraph – I'm just going to quote, since we have not cited that case. The BIA disagreed, vacated IJ's conclusion on the expert because there's no indication that IJ reasonably considered whether the witness's opinion had a sufficient factual basis to essentially establish the respondent's claim. So I take it as it doesn't have to be one page. It could be done with two sentences, three sentences, as long as the agency provides reasons as to why it is giving reduced weight or ignoring the expert conclusion. So, for example, if there's a tension between the expert's opinion and the other objective country conditions, then the agency can just provide that reason as a basis to disregard or give reduced weight to the evidence of the expert. But that is completely missing in this case. So, again, I don't think we are asking the court to micromanage the agency. I see that my time is up, Chief Judge Howard. I believe I can respond to remaining questions if there are in my rebuttal time. Yes, thank you. Thank you. Ms. Green. May it please the Court. My name is Susan Green. I represent the Attorney General. Your Honors, the briefing in this case, Mr. Chavez's brief, raised a plethora of really big, important asylum issues and withholding issues. I think that the focus of the argument has really changed this morning, and so I'm going to try to change my argument to just focus on what Mr. Kim is now arguing. As I take it, he's kind of reduced his legal argument on his theories to this imputed gang membership claim, and so I'd just like to address that. First, I want to say that before you even get into this question about imputed gang members, whether they can be a particular social group, it's important to acknowledge that the Board said that there was no nexus between the things that happened with the police back in Mr. Chavez's time in El Salvador. There was no nexus between that and any idea that he was a gang member. The Board said that, and the evidence supports that. His recounting of his experience with the police, there was nothing about the police saying anything that he was a gang member, and this is the key thing. Remember, he claimed in the hearing that the police must have thought he was a gang member because of the tattoo on his hand, but that contradicts his own testimony because he said very specifically that the tattoo on his hand at the time he got it in the 1990s was not a gang tattoo. So for him to now argue, to base his whole claim on the idea that the police must have thought that it was a gang tattoo when he said it wasn't a gang tattoo, kind of ties us all up in knots. So there was no nexus for that between what happened with the police and any imputed gang membership. The way I understand it now is he's no longer relying on his one experience where the gang member actually hurt him for painting the Mara 18 graffiti over the MS 13 graffiti. Now he only wants to talk about the possibility of future harm. But remember he talked a lot about when he was back in El Salvador in 2012 about his experiences with the MS 13 at that time, and he never said anything about them thinking that he was a Mara 18 member. So he said at one point that he thought he was afraid that they might make him undress to look for tattoos, but the only tattoo that he described having is the one on his hand that was in plain view. I'm sure I understand. I mean you don't really want us to engage with these legal issues, right? I mean you're in a position that we should never get to them because of the nexus issue. Isn't that your position? Right, I'm saying the many legal arguments that he makes that I think that you should never reach, I think that you don't even need to reach this imputed gang membership issue because he said that the board said there was no nexus, certainly between what happened with the police and any imputed gang membership. So I think that for that reason, at the threshold, that is one more reason why you don't need to get into that. Well it's probably, I mean it may be just, just on the imputed gang membership, to me there's an enormous difference between actually being a member of a gang and a perception. I mean I can understand all of the reasons why if somebody has a history of gang membership, they should not be eligible for withholding removal. That makes perfect sense. But if it's, but if that, if perception of gang membership, which could be wildly inaccurate, unfair, that that should be treated as the equivalent of actual gang membership, that strikes me as a deeply problematic proposition. How do you defend equating the two, actual membership and perception of membership? Okay, I have really two answers to that question, and the first one is the legal statutory answer to that. And that is that, you know, the statute requires membership, it requires persecution on account of one, of five protected grounds, race, religion, nationality, political opinion, or membership in a particular social group. So the background is that most people that are victims of gang crime don't have any of those protected ground reasons. Most people who are subject to gang crime simply are not eligible for asylum on the basis of that. The board, when it interpreted matter of particular social group, a very broad term, said, you know, we are not going to read particular social group in such a way that would actually extend to gang membership and sort of privilege people on the basis of gang membership above all these other innocent people that don't qualify for asylum. And this court said, yes, that's reasonable. So the way the statute works is you have to have, you know, one of those protected grounds, and if membership in a particular, in a gang is not one of those grounds, then imputed membership in a gang isn't either, and to try to bring that within the statute simply short circuits the statute. And maybe an easy way to think of this is to think about other grounds. Say if someone said, well, I'm going to be persecuted because I'm gambling, and gambling is my religion, and I'm going to be persecuted for that reason, and the board said, well, no, gambling is not a religion, so that's not a protected ground, so you won't qualify for asylum. What if the next person said, well, I'm going to be persecuted because even though I haven't been gambling, people think I'm gambling? The answer would still be, no, that's not a protected ground. So I think that in order to make imputed membership in a gang, to try to bring that in a statute would be simply going around the statute. But the second thing I want to say that in this particular case, what's even more important is that, you know, Mr. Chavez is asking you to make some exception or workaround to the statute, but his particular case is really not an appropriate one for the test case for that, because what made anybody think that he was in a gang was that he painted gang graffiti. The only time he got in trouble with the MS-13 was when he painted MARA-18 graffiti over their graffiti. So this is not a clear line. He says he wasn't a member of a gang, and yet he clearly participated in inter-gang hostilities. So of all cases for the court to try to make an inroad on the Canarrero EAG rule, this is a particularly inappropriate case because Mr. Chavez led the people in the MS-13 to believe that he was in the MARA-18 by his participating in inter-gang hostilities. And does that answer your question? Yes, thank you. Yes, thank you. Okay. And the other thing that Mr. Kim talked about at length in his argument is about the board and the IJ overlooking the expert evidence, and I just think that is not well-founded at all. The board particularly discussed this question at page 7 of the administrative record, and the immigration judge talked at length about the expert at page 65 of the administrative record. And the thing with the expert's testimony, or there's a lot in the expert's testimony that was not relevant to this case. I mean, he was talking about the MS-13 being a de facto state under Max Weber's definition, and yet he admitted that the gang wasn't using legitimate use of violence. It was not legitimate. So there was a lot in that expert's testimony. But the key point of the expert's testimony is he was talking about the likelihood that Mr. Chavez would be harmed in the future, and he said likelihood he'd be harmed by the gang or police, and he didn't try to divide those out. And the immigration judge then actually questioned him about the likelihood that something would go wrong with the police, and he kind of narrowed it down, and the expert eventually said, well, you know, actually, I'm not opining that just by being removed that he would somehow come to the attention of the police and wind up being in harm's way. And so the immigration judge relied on that and discussed it. Can you just clarify something? You just alluded to this. One of the things I find puzzling about this case, and it's reflected in the decisions of the IJ and the BIA, they seem to talk about persecution by MS-13, persecution by the police, as if they are sort of the equivalent issues of persecution. That can't be right. I mean, persecution by MS-13, unless you accept the proposition that they are a de facto state actor, I don't even know why that's relevant, the fact that he might have been subject to persecution by MS-13 because they perceive that he is opposed to them. Unless you get into the issues of acquiescence under the Convention Against Torture, I don't see why that's even relevant, and yet the IJ and the BIA seem to treat that as an equivalent issue to persecution by the police. Isn't that a fundamental misconception that's present in the decisions? Right, and I think, Your Honor, that I think the explanation for why they maybe gave that sort of more credence than it ought to get is because there was this expert testimony that was equating gang violence to the violence by the government. And so rather than go into Max Weber and talk about Max Weber's view of the government and so forth, I think that the board and the IJ were just saying, you know, actually, you haven't proved a nexus anyway. The IJ actually found several of the elements of withholding were missing. I think that sort of anomaly that you're pointing to was simply a way to try to avoid having to go into the deep depths of the experts' political science theories. That's how I interpret the decision. And, of course, even with that regard, the CIT, of course, doesn't require persecution on account of a protected ground. And so I think for that reason, they went into the fact that the likelihood of harm by either. But, of course, for CIT, there had to be some likelihood of acquiescence or official involvement by the police. And the immigration judge and the board both said, well, there is no likelihood shown in this case, especially since he was back in 2012 and had no trouble at all with the police. Ms. Green, at this point, I'm going to ask whether either of the judges have any additional questions. No, thank you. Thank you for your argument. Thank you, Your Honor. I ask you to affirm the board's decision. Thank you. Yes, Mr. Kim. Thank you, Chief Judge Howard. May it please the court. I would just make one point briefly. Now, let's assume that there was no persecution based on impunity gang membership or past persecution. And also, even though the agency did not address the clear probability of future persecution, I would just assume that the court can still address it and deny it. Now, I'm looking at the petitioner's BIA brief under this impunity gang membership section, which is the record 39. The petitioner did not only identify police as the persecutor for this claim. The petitioner also identified MS-13 as the targeted persecutor that would harm petitioner based on this impunity gang membership claim. I'm looking at the agency's decision, page number two, record number five. An agency related to the anti-gang political opinion claim found that the MS-13 attacked him because they believed him that he was part of the rival gang, so suspected gang member. So, even if I take the government is correct that there's no past persecution based on this impunity gang membership for police, the agency did not address the MS-13 claim with respect to this particular social group. Even assuming the agency's anti-gang political opinion claim can be drawn as the same basis for the nexus, agency actually acknowledged and found that there was a nexus on the past persecution. So, we asked the court to address the matter of BAG because the way the agency decided the case has shown that there was sufficient nexus between the MS-13 and how they perceive petitioner as an imputed gang member. So, we asked the court to address that issue and at least vacate that point and remand to the agency consistent with the court's opinion. Thank you. Thank you, Your Honor. That concludes arguments in this case. Attorney Kim, please do not disconnect from the meeting at this time. Attorney Green, you should disconnect from the hearing at this time.